Tommie E. L. WILLIAMS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–15860.

Court of Criminal Appeals of Oklahoma.

Dec. 27, 1972.

John F. Gray, Oklahoma City, for appellant.

Roy H. Semtner, Municipal Counselor, Ron Collier, Asst. Municipal Counselor, Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Tommie E. L. Williams, hereinafter referred to as defendant, was charged, tried and convicted in the Oklahoma City Municipal Criminal Court of Record, Oklahoma County, for the offense of Driving Under the Influence of Intoxicating Liquor. His punishment was fixed at ninety (90) days in the City Jail and a fine of Fifty Dollars ($50.00), and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Lillie Mae Britton testified that on the 7th day of August, 1967, at approximately 10:50 p. m., she was driving east on Northeast Fourth Street in Oklahoma City. As she approached Byers, a car crossed the center line and struck the left side of her car near the back door and rear fender. She testified that the point of impact was almost directly under a street light and that the defendant was driving the car that struck her. She did not see any other passengers in the vehicle. The defendant did not stop at the scene and drove approximately a block and a half. She walked down to the defendant's vehicle and observed that it was damaged on the left front fender and the left front tire was flat. The defendant was talking to some people in the yard at 425 Northeast Fourth. She attempted to have a discussion with the defendant concerning the accident and when she "couldn't get a decent answer from him" she called the police.

Louis Beasley testified that he was a passenger in Miss Britton's vehicle on the evening in question. He identified the defendant as the driver of the car that struck Miss Britton's car. He testified that there was no one in the car with the defendant.

Officer Keenum testified that he investigated the accident at Northeast Fourth and Byers Street. He observed the point of impact to be in the eastbound traffic lane. He checked the Britton vehicle and observed that the rear door and rear fender were damaged. He further observed off-blue paint on the damaged part of the vehicle. He proceeded down the street to where the defendant's car was parked. There was considerable damage to the left front of the defendant's faded blue colored car. The left front tire was flat. He attempted to discuss the accident with the defendant and the defendant "was cursing and would not answer my questions." The defendant did state that he was not driving the car. Officer Keenum testified further

that he smelled the odor of an alcoholic beverage on the defendant and that the defendant had great difficulty in standing. In his opinion, the defendant was under the influence of alcohol.

The defendant testified that on the evening in question, he met Oscar Allen at 1000 Northeast Fourth Street. Allen stated that he wanted to drive the defendant's car home. Allen drove the vehicle and they arrived at defendant's home at approximately 10:40 p. m. Approximately thirty minutes after he arrived home, he was talking to a girl concerning some back rent when the police arrived. The officer advised him that he had been drinking and driving and he replied that he had not been driving and did not have the keys to the car. He identified an accident report wherein his car had been involved in an accident in July damaging the front left fender.

On cross-examination, he testified that he did not drive his car "from the time I got off of work up until that accident was supposed to have occurred." (Tr. 93) His car had a dent in the front left fender but did not have a flat tire. He testified that he left home at about 7:45 and drove to the 1000 block on Northeast Fourth. He went to his cousin's "joint" and drank one can of beer. Oscar Allen was in the "joint" and stated that he wanted to drive his car home.

On re-direct examination, the following question was asked: "Q. Mr. Williams, did you ask Oscar Allen to be here today?". The defendant responded: "A. Yes, I did—no, I didn't ask Oscar because he moved to Wichita and I don't know what his location or address, or nothing. I tried to find him." (Tr. 108–109)

▆ The first proposition asserts that the trial court abused its discretion in refusing to grant a new trial on the basis of newly discovered evidence, to-wit: An affidavit from one Louis Tucker, Jr. to the effect that he was the driver of defendant's automobile on the evening in question and that at no time was the defendant driving his own car. We are of the opinion that the trial court did not abuse its discretion in overruling the motion for new trial. The record reflects that the defendant appeared with counsel on August 9, 1967. A plea of Not Guilty was entered and the case was set for jury trial on August 29. On August 18, the defendant filed a Praecipe for Subpoenas for J. Keenum, Louise Beasley, Lillie Mae Britton and Loice Pearl. The same witnesses were also subpoenaed by the City. On August 29, the case was continued until October 3. The City again filed a Praecipe for Subpoenas for the same witnesses. The defendant did not issue process for any witnesses. The defendant announced ready for trial and did not request a continuance. We are of the opinion that the defendant has failed to show due diligence in procuring the attendance of the witness. We further observe that if the defendant had shown diligence that the motion for new trial was properly overruled. Louis Tucker's Affidavit adduced that he, rather than the defendant, was driving the car on the day in question. At a subsequent trial, Tucker could invoke the privilege against self-incrimination and refuse to testify. In Luppy v. State, 14 Okl.Cr. 386, 171 P. 347 (1918), we stated:

"The application for a new trial on the ground of newly discovered evidence is without merit, because it is apparent from this record that the defendants knew of the absent witness long before they were tried, and did not exercise due diligence either to obtain his presence at the trial or take his deposition, and also that, *if such person was produced as a witness, he could not be made to testify to facts or circumstances which would tend solely to incriminate himself,* and the affidavit shows that the facts which were expected to be proved by said witness were such as would fasten guilt for the alleged crime upon him." (Emphasis added.)

▆ The final proposition contends that "the evidence introduced at the trial was so incompetent, inconsistent and conflicting as to be wholly unbelievable and the court

should have granted a new trial." We are of the opinion that this proposition is likewise without merit. The testimony of the witnesses for the City was not so incompetent, inconsistent and conflicting as was the testimony of the defendant. The jury chose to believe the City's witnesses. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, this Court will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom as it is the exclusive province of the jury to weigh the evidence and determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805.

In conclusion, we observe that the record reflects that the defendant is an indigent. Therefore, in the interest of justice, the judgment and sentence is modified to a term of ninety (90) days in the City Jail, and as so modified, is affirmed.

Modified and affirmed.

BLISS and BRETT, JJ., concur.